UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN DAVID PAMPLIN,<br><br>            Plaintiff,<br><br>   v.<br><br>WARDEN BAKER, *et al.*,<br>            Defendants. | 3:16-cv-00745-MMD-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff John David Pamplin ("Pamplin") against Defendants Renee Baker, James Dzurenda, Robin Hager, John Keast, Gregory Martin and Brian Sandoval (collectively referred to as "Defendants").[2] Currently pending before the court is Defendants' motion for summary judgment. (ECF Nos. 69, 71).[3] Pamplin opposed the motion (ECF No. 76), and Defendants replied. (ECF No. 81.) For the reasons stated below, the court recommends Defendants' motion for summary judgment (ECF No. 69) be granted, in part, and denied, in part.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Pamplin is an inmate lawfully in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Northern Nevada Correctional Center ("NNCC"). (*See* ECF No. 29.) Pamplin sues for events that occurred at the Ely State Prison ("ESP"), the Lovelock Correctional Center ("LCC"), and NNCC. (ECF No. 8 at 1.) Proceeding *pro se*, Pamplin filed the instant civil rights action pursuant to 42

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    Pamplin also named ESP Correctional Officer Kimal. (*See* ECF No. 8.) Defendant Kimal was never served in this matter and was dismissed pursuant to FRCP 4(m) on November 5, 2019. (*See* ECF No. 75.)

[3]    ECF No. 71 contains sealed documents in support of Defendants' motion for summary judgment.

U.S.C. § 1983, alleging two counts and seeking injunctive relief and damages. (*Id.* at 6-7, 11.)

Pamplin's First Amended Complaint ("FAC") alleges the following. In 2003, Pamplin was diagnosed with drop foot while he was incarcerated at NNCC and was provided with a drop foot brace. (*Id.* at 5.) On August 2, 2014, Pamplin alleges correctional officer ("CO") Kimal seized the brace during a cell search and said that Pamplin did not need it. (*Id.*) Pamplin's family contacted the warden.[4] (*Id.*) On January 2, 2015, Pamplin's right hip was causing him pain, so he wrote to medical and submitted a grievance, but did not receive any help. (*Id.*) On November 15, 2015, Pamplin experienced great pain in his lower back making it difficult to sleep, so he sent kites to medical. (*Id.*) On April 9, 2016, Pamplin was transferred to LCC. (*Id.*) The property sergeant informed him that he had never seen Pamplin's brace. (*Id.*) During screening at LCC, Pamplin informed the head of medical about the pain in his back and hip, but Pamplin never received help. (*Id.*) On August 10, 2016, Pamplin was transferred to NNCC, where he immediately sent a kite. (*Id.*) On August 30, 2016, Pamplin wrote an emergency grievance. (*Id.*) Pamplin's family then called NDOC Director Dzurenda and wrote Governor Sandoval. (*Id.*)

On September 19, 2016, Pamplin sent a kite to Defendant Hager and non-party Brockaway. (*Id.* at 5, 11.) On November 10, 2016, Pamplin sent a kite to Defendant Keast. (*Id.* at 11.) On December 21, 2016, Pamplin received a kite stating that he would be seen, but Pamplin was never scheduled for an appointment. (*Id.*) On January 3, 2017, Pamplin was transferred to ESP where he immediately sent a kite. (*Id.*) On January 30, 2017, Pamplin saw Defendant Martin, who allegedly said he was sending Pamplin for an MRI and a drop foot brace fitting. (*Id.*) However, Pamplin was sent only for an x-ray and given a pain reliever and muscle relaxer to be taken twice daily. (*Id.*) Martin also sent Pamplin an ankle brace, which Pamplin claimed he did not need. (*Id.*)

---

[4] The court construed "the warden" to mean Warden Baker. (*See* ECF No. 10 at 4.)

2

1  Pamplin sent more kites, but nothing was done for his lower back. (*Id.*) Pamplin states he is suffering and medical will not help with his pain or provide him with a drop foot brace. (*Id.*)

Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a screening order allowing Pamplin to proceed with Count I, a due process claim with respect to the confiscation of Pamplin's drop foot brace, and Count II for Eighth Amendment deliberate indifference to serious medical needs. (ECF No. 10.)

On October 30, 2019, Defendants filed their motion for summary judgment asserting they are entitled to summary judgment because: (1) Pamplin had post-deprivation remedies for the alleged loss of property he did not exercise; (2) Defendants were not deliberately indifferent to a serious medical need; and, (3) Defendants are entitled to qualified immunity. (ECF No. 69.) Pamplin opposed the motion. (ECF No. 76).

**II.    LEGAL STANDARD**

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its

3

truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, based on authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III. DISCUSSION

### A. Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Fourteenth Amendment Due Process Deprivation of Property

Defendants argue they are entitled to summary judgment on Count I because Pamplin's allegations fail to state a claim and there is no genuine dispute that Pamplin received due process. (ECF No. 69 at 5-7.)

While an authorized, intentional deprivation of property is actionable under the Due Process Clause, where a prisoner alleges the deprivation of a liberty or property interest caused by the unauthorized negligent or intentional action of a prison official, the prisoner cannot state a constitutional claim where the state provides an adequate post-deprivation remedy. *See Zinermon v. Burch,* 494 U.S. 113, 129–32 (1990); *Hudson v.*

5

*Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 527, 543–44 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). A state post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. *See Hudson,* 468 U.S. at 531 n.11. The existence of an adequate post-deprivation remedy is irrelevant where the prisoner is challenging conduct taken pursuant to an established state procedure, rule, or regulation – i.e., where the prison official's conduct is authorized by the state. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36 (1982).

Here, Pamplin's claim against Defendants fails because a negligent or unauthorized intentional deprivation of property by a prison official is not actionable if a meaningful post-deprivation remedy is available. *Quick v. Jones,* 754 F.2d 1521, 1524 (9th Cir. 1985). A post-deprivation remedy was available to Pamplin through the grievance process, and it is undisputed that Pamplin did not file a grievance until December 30, 2016, more than two years after the brace was allegedly seized by Defendant Kimal. (*See* ECF Nos. 69 at 6; 69-3; 76 at 6.) Instead, Pamplin claims that on an unspecified date following the incident, his family allegedly contacted Warden Baker, Director Dzurenda, and Governor Sandoval to inform them that Pamplin's brace was confiscated and he needed a new brace and medical care, which fell outside the normal grievance procedure. (*Id.*) Ultimately, Pamplin's 2016 grievance was resolved because he was seen by a medical provider and received a new brace. (ECF No. 69-3 at 1.)

Furthermore, Pamplin's due process rights were not violated because he also had an opportunity to seek recovery for the brace in small claims court. *See* Nev. Rev. Stat. § 41.0322 (setting forth guidelines for actions by persons in custody of the NDOC to recover compensation for loss or injury). Nevada has waived sovereign immunity for civil actions against state officials, and as such, an aggrieved person such as Pamplin, has the right to sue in tort under state law. *See* NRS §§ 41.031; 41.0322. Nevada law enables a person, including an incarcerated person, who has been wrongfully deprived of property to seek redress through a state civil action. *See* NRS §§ 41.0322; 73.010;

41.031. Specifically, persons claiming less than $7,500 in property damage may sue in small claims under a local Justice of the Peace. *See* NRS §§ 4.370(o); 73.101 *et seq.* Accordingly, in addition to filing a NDOC grievance, Pamplin was able to redress the loss of the brace by filing a small claims suit in the state justice court and failed to do so. Therefore, as a matter of law, Pamplin cannot sue in a § 1983 action on a claim that the state deprived him of property without due process of law because there is no such violation where the law affords due process. *See Parratt,* 451 U.S. at 538-39. There is no genuine dispute of material fact in this case because a state small claims action is the appropriate remedy for the alleged loss of Pamplin's property and the local justice court had proper jurisdiction over this matter. Thus, summary judgment in favor of the Defendants should be granted on Count I.

### C. **Eighth Amendment Deliberate Indifference to Serious Medical Needs**

Defendants argue they are entitled to summary judgment on Count II because Pamplin's allegations fail to state a claim and there is no genuine dispute that Defendants were not deliberately indifferent to Pamplin's serious medical needs. (ECF No. 69 at 7-10.)

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066

(9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the

circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

According to Defendants, Pamplin was diagnosed with drop foot and provided with a drop foot brace. (ECF Nos. 69 at 6; 71-1.) Defendants argue that medical staff entered an order for the leg brace for one year from July 23, 2012. (ECF No. 69 at 9; s*ee generally* ECF No. 71-2.) Defendants claim Pamplin did not kite to see a medical provider to have the order renewed after it expired in 2013, and there are no records of any kites, grievances or other correspondence from Pamplin regarding the brace until April 2016. (*Id.*; *see generally* ECF No 69-3.) Pamplin was scheduled to see a medical provider on September 7, 2016. (ECF No. 69-1 at 003.) However, Pamplin was moved to the lock down unit after the clinic schedule was posted and he did not show up to his appointment. (ECF No. 69-3 at 009.) Pamplin submitted another kite in November 2016 and was seen by medical staff at NNCC on January 12, 2017, where a right foot/ankle brace was ordered, and pain medication was provided for his hip and back conditions, including Naproxen, Flexeril, and analgesic balm. (*Id.*)

In their motion for summary judgment, Defendants argue Pamplin's complaint does not present evidence that the course of treatment he was provided was medically inappropriate, but instead shows he preferred a different course of treatment. (ECF No. 69 at 9.) Second, Defendants argue that Pamplin was seen by medical providers, had x-rays taken of three views of Pamplin's pelvis, and received medication to manage his pain. (*Id.* at 9-10; s*ee* ECF Nos. 69-1, 69-2, 69-3, 71-3, 71-4.) In sum, Defendants assert the medical evidence in the record demonstrates any alleged issues regarding the failure to x-ray and treat Pamplin's back; ordering an ankle brace instead of a drop foot brace; and failing to provide rehabilitation services resulted from Pamplin's failure to notify medical of his persistent issues. (*Id.* at 10.)

Pamplin asserts that after his initial drop foot brace was seized by CO Kimal, he began to develop pain in his lower back and right hip as a result. (ECF No. 76 at 3.) Pamplin alleges Defendants were deliberately indifferent to his serious medical needs by failing to provide adequate treatment related to his drop foot condition and resulting hip and back pain. (*Id.*) Pamplin alleges he repeatedly sent kites regarding the pain in his right hip at LCC, and received no responses and was never seen by medical at LCC, and sent kites at NNCC regarding both his hip and lower back pain, with no response until December 2016, but was never seen by medical at NNCC. (*Id.* at 4.) Upon his return to ESP, Pamplin sent additional kites and saw Defendant Martin in January 2017, who allegedly informed him he would be sent for an MRI and be fitted for an "AFO drop foot brace." (*Id.*) However, Pamplin asserts he was only sent for an x-ray of his right hip and given pain reliever Naproxen and a muscle relaxer to take twice daily. (*Id.*) As such, the treatment he received did not eliminate the problem or alleviate his pain, making the course of treatment inadequate. (*Id.* at 8-9.) Pamplin argues the ankle brace ordered in the place of the AFO drop foot brace does nothing to support his walking disability and shows Defendants' deliberate indifference to his serious medical needs. (*Id.* at 13.)

As to the objective element of deliberate indifference, it appears to be undisputed that Pamplin's drop foot condition and back and hip pain constitute serious medical needs. Thus, the court finds the objective element of deliberate indifference has been satisfied.

As to the subjective element, Pamplin argues Defendants' chosen course of treatment was medically inappropriate and ultimately did nothing to alleviate Pamplin's hip and back pain. (ECF No. 76.) Defendants argue the medical records prove they did not act with deliberate indifference because they provided Pamplin with medical appointments, medication, and an ankle brace. (ECF No. 69.) Further, Defendants allege this dispute simply boils down to a disagreement about the choice of treatment, which does not amount to an Eighth Amendment violation. (*Id.*)

First, the medical records provided by Defendants are somewhat illegible and appear to be incomplete. (*See* ECF Nos. 71-3, 71-4.) Defendants do not provide any further evidence, such as declarations from Defendants regarding Pamplin's medical treatment, severity of the condition, appropriate standard of care, responses to interrogatories, etc., to support their position. Thus, it is unclear to the court that Pamplin's medical needs were in fact adequately addressed. On this basis alone, the court finds Defendants failed to meet their burden of establishing that no material issue of fact exists as to the claim.

However, even if the Defendants' materials were legible and complete, the court finds a genuine issue of material fact exists as to whether the chosen course of treatment was medically unacceptable under the circumstances and whether the treatment was chosen in conscious disregard of an excessive risk of exacerbating Pamplin's condition. Pamplin argues during his time at LCC he received no responses to his multiple medical kites for his hip pain or requests to receive another drop foot brace, and likewise, immediately upon arrival at NNCC the same problems occurred. Thus, the court has concerns about whether the chosen course of treatment received by Pamplin at ESP, which appears to be over-the-counter pain medication, prescription muscle relaxants, analgesic balm, and an ankle brace, was medically acceptable under these circumstances. It is also unclear whether failing to provide rehabilitation services was medically acceptable under the circumstances. Because Defendants do not specifically address these issues, there is a factual dispute as to whether the chosen course of treatment was medically unacceptable under the circumstances.

Based on all the above, the court cannot say as a matter of law that Defendants were not deliberately indifferent to Pamplin's serious medical needs, which ultimately resulted in him developing additional medical issues for Defendants' failure to properly treat Pamplin's drop foot condition. Accordingly, summary judgment should be denied as to Plaintiff's claim that Defendants were deliberately indifferent to Pamplin's serious medical needs.

### D. Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42.

"[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated… is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018). While the court finds a genuine issue of material fact exists as to

whether Pamplin's constitutional rights were violated, the court will address the "clearly established" prong at this time.

Defendants Hager, Keast, and Martin contend they are entitled to qualified immunity because Pamplin's claims for deliberate indifference to his serious medical needs are unfounded and without merit since Pamplin received a new brace, was seen by medical professionals, and prescribed pain medicines for his hip and back. (ECF No. 69 at 15; *see also* ECF Nos. 69-3, 71-3, 71-4.)  According to Defendants, even if the court believes there could be a factual question as to the constitutional claims, Defendants assert they were not on clear notice that their objectively reasonable decision to confiscate Pamplin's brace did not violate the Constitution based on the lack of case law putting Defendants on notice.  This position has expressly been rejected by the Supreme Court and the Ninth Circuit.  It is not required there be a case directly on point before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  "For a right to be clearly established it is not necessary that the very action in question have previously been held unlawful." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)  "To define the law in question too narrowly would be to allow defendants to define away all potential claims." *Jackson*, 90 F.3d at 332 (citing *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995)).

Defendants' argument that Pamplin failed to identify which clearly established law each Defendant violated is unconvincing.  Pamplin alleges the chosen course of treatment Defendants provided was medically unacceptable under the circumstances. It is settled law that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. *Jackson*, 90 F.3d at 332 (9th Cir. 1996) (citing *Estelle*, 429 U.S. at 104).  Specifically, it is settled law that choosing a course of treatment that is medically unacceptable under the circumstances and is chosen in conscious disregard of an excessive risk to an inmate's health is a constitutional violation.

13

*Toguchi*, 391 F.3d at 1058 (citing *Jackson*, 90 F.3d at 332). Thus, the constitutional right was clearly established such that reasonable prison officials would have known that providing medically unacceptable treatments constitutes unlawful deliberate indifference. Accordingly, the court finds that the constitutional right is clearly established, and Defendants are not entitled to qualified immunity for Count II.

## IV.   CONCLUSION

Based upon the foregoing, the court recommends Defendants' motion for summary judgment (ECF No. 69) be granted as to Count I and denied as to Count II.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 69) be **GRANTED** as to Count I and **DENIED** as to Count II.

**DATED**: March 5, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**